# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC, ) ) | |
| Plaintiff, ) | |
| ) | No. 14 C 9852 |
| v. ) | |
| ) | Judge Rebecca R. Pallmeyer |
| TELULAR CORPORATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Joao Control & Monitoring Systems, LLC ("Plaintiff" or "Joao Control") owns a number of patents, including the two at issue in this case. Joao Control filed this lawsuit against Defendant Telular Corporation ("Defendant" or "Telular"), alleging infringement of two patents for systems designed to provide security for vehicles and premises through a computer network connected to the Internet. Telular contends that the two patents violate the Patent Act, 35 U.S.C. § 101, because they are based on abstract ideas and do not contain any "inventive concept" sufficient to confer patent eligibility. For the reasons set forth below, the court agrees. Defendant's motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) is granted.

## BACKGROUND

Plaintiff Joao Control is a Delaware corporation with its principal place of business in Yonkers, New York. (Compl. [1] ¶ 2.) Defendant Telular Corporation is a Delaware corporation with its principal place of business in Chicago, Illinois. (*Id.* ¶ 3.) The two patents-in-suit—United States Patent No. 6,587,046 (the "`046 patent") and United States Patent No. 7,397,363 (the "`363 patent")—were issued by the U.S. Patent and Trademark Office to Raymond A. Joao, who subsequently assigned all rights, title, and interest to Plaintiff. The `046 patent was issued in July 2003, and the `363 patent was issued in July 2008. (`046 patent at 1, Compl. Ex. A; `363 patent at 1, Compl. Ex. B.) The subject matter of the two patents is similar; they both broadly claim apparatuses and methods for monitoring and controlling property remotely through a

computer network and the Internet. Each patent, moreover, aims to "overcom[e] the disadvantages and drawbacks . . . associated with the known prior art control, monitoring, and/or security systems" by "allowing owners, occupants and/or other authorized individuals to exercise and/or provide control, monitoring and/or security functions over [vehicles and] premises, from a remote location and at any time." (`046 patent, col. 3, ll. 8–11, 15–18; `363 patent, col. 3, ll. 5–9, 13–15.)

**A.  The `046 Patent**

The `046 patent, entitled "Monitoring Apparatus and Method," generally describes a system for monitoring physical property from a remote location through a network of devices connected to "the Internet or World Wide Web." (`046 patent, Abstract.) The patent is 82 pages long and contains a total of 112 claims: 6 independent claims and 106 dependent claims. (*Id.* at col. 109, l. 1 – col. 118, l. 36.) Claims 1 and 30 of the `046 patent are representative and claim the following:

> 1. A monitoring apparatus, comprising:
>
> a processing device, wherein the processing device receives video information recorded by at least one of a video recording device and a camera, wherein the at least one of a video recording device and a camera is located at a vehicle, and wherein the processing device is located at a location remote from the vehicle,
>
> wherein the processing device receives a signal transmitted from a communication device, wherein the communication device is located at a location remote from the processing device and remote from the vehicle, wherein the video information is transmitted from the processing device to the communication device in response to the signal, and further wherein the video information is transmitted to the communication device on or over at least one of the Internet and the World Wide Web.
>
> 30. A monitoring apparatus, comprising:
>
> a processing device, wherein the processing device receives video information recorded by at least one of a video recording device and a camera, wherein the at least one of a video recording device and a camera is located at a premises, and wherein the processing device is located at a location remote from the premises,

>wherein the processing device receives a signal transmitted from a communication device, wherein the communication device is located at a location remote from the processing device and remote from the premises, wherein the video information is transmitted from the processing device to the communication device in response to the signal, and further wherein the video information is transmitted to the communication device on or over at least one of the Internet and the World Wide Web.

(*Id.* at col. 109, ll. 1–17; col. 11, ll. 14–31.) As is evident from the claim language, claims 1 and 30 describe the same apparatus, except that the apparatus described in claim 1 applies to the monitoring of a *vehicle*, and the apparatus described in claim 30 applies to the monitoring of a *premises*.

The other claims in the `046 patent contain only slight variations of the monitoring apparatuses described in claims 1 and 30. Dependent claims 6, 17, 35, and 46, for example, describe the same apparatuses as those described in claims 1 and 30, but include a "processing device" with slightly different capabilities. (*Id.* at col. 110, ll. 19–31; col. 111, ll. 46–52; col. 112, ll. 35–47.) Specifically, the processing device described in claims 17 and 46 can "control [the] operation of" the video or camera located at the vehicle or premises, in addition to transmitting signals to the communication device, while the processing device described in claims 6 and 35 can receive and transmit "audio information" from an audio recording device located at the vehicle or premises. (*Id.*) Independent claims 58 and 85 describe apparatuses almost identical to those recited in claims 1 and 30, except that the "video recording device" component sends information to a "transmitter," which transmits the information to the processing device, as opposed to sending the information directly to the processing device. (*Id.* at col. 113, ll. 33–58.) Independent claims 111 and 112 similarly describe a "method" for receiving and transmitting video information from a vehicle or premises to a remote location through the use of a "video recording device and camera," "transmitter," "processing device," and "communication device." (*Id.* at col. 117, l. 34 – col. 118, l. 36.)

**B.     The `363 Patent**

The `363 patent, entitled "Control and/or Monitoring Apparatus and Method," describes a system for monitoring and controlling property from a remote location through a network of devices connected to "the Internet and/or World Wide Web." (`363 patent, Abstract.) The patent is 87 pages long and contains a total of 88 claims: 7 independent claims and 81 dependent claims. (*Id.* at col. 104, l. 13 – col. 122, l. 67.) Claims 1 and 21, worded awkwardly, are representative of the patent:

> 1.     An apparatus, comprising:
>
> a first processing device, wherein the first processing device at least one of generates a first signal and transmits a first signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, at least one of a premises system, a premises device, a premises equipment, a premises equipment system, a premises component, and a premises appliance, of or located at a premises, wherein the first processing device is associated with a web site, and further wherein the first processing device is located at a location remote from the premises,
>
> wherein the first processing device at least one of generates the first signal and transmits the first signal in response to a second signal, wherein the second signal is at least one of generated by a second processing device, wherein the second processing device is located at a location which is remote from the first processing device and remote from the premises, wherein the first processing device determines whether an action or an operation associated with information contained in the second signal, to at least one of activate, de-activate, disable, re-enable, and control an operation of, at least one of a premises system, a premises device, a premises equipment, a premises equipment system, a premises component, and a premises appliance, is an authorized or allowed action or an authorized or allowed operation, and further wherein the first processing device at least one of generates the first signal and transmits the first signal to a third processing device if the action or the operation is determined to be authorized or an allowed operation, wherein the third processing device is located at the premises,
>
> wherein the second signal is transmitted to the first processing device via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the second signal is automatically received by the first processing device, wherein the first signal is transmitted to and automatically received by the third processing device, wherein the third processing device at least one of generates a third signal and transmits a third signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, the at least one of a premises system, a premises device, a premises

> equipment, a premises equipment system, a premises component, and a premises appliance, in response to the first signal.
>
> 21. An apparatus, comprising:
>
> a first processing device, wherein the first processing device at least one of generates a first signal and transmits a first signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, of or located at a vehicle, wherein the first processing device is associated with a web site, and further wherein the first processing device is located at a location remote from the vehicle,
>
> wherein the first processing device at least one of generates the first signal and transmits the first signal in response to a second signal, wherein the second signal is at least one of generated by a second processing device and transmitted from a second processing device, wherein the second processing device is located at a location which is remote from the first processing device and remote from the vehicle, wherein the first processing device determines whether an action or an operation associated with information contained in the second signal, to at least one of activate, de-activate, disable, re-enable, and control an operation of, the at least one of a vehicle system, a vehicle equipment system, vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, is an authorized or allowed action or an authorized or an allowed operation, and further wherein the first processing device at least one of generates the first signal and transmits the first signal to a third processing device if the action or the operation is determined to be an authorized or an allowed operation, wherein the third processing device is located at the vehicle,
>
> wherein the second signal is transmitted to the first processing device via, on, or over, at least one of the Internet and the World Wide Web, and further wherein the second signal is automatically received by the first processing device, wherein the first signal is transmitted to and automatically received by the third processing device, wherein the third processing device at least one of generates a third signal and transmits a third signal for at least one of activating, de-activating, disabling, re-enabling, and controlling an operation of, the at least one of a vehicle system, a vehicle equipment system, a vehicle component, a vehicle device, a vehicle equipment, and a vehicle appliance, in response to the first signal.

(`363 patent, col. 104, ll. 13–60; col. 108, ll. 16–62.) Like the `046 patent, claims 1 and 21 of the `363 patent describe the same apparatus, except that the apparatus described in claim 1 applies to the monitoring of a *premises*, and the apparatus described in claim 21 applies to the monitoring of a *vehicle*.

The other claims of the `363 patent build upon, but do not vary significantly from, the apparatuses described in claims 1 and 21. Dependent claims 9 and 33, for example, describe the same apparatuses recited in claims 1 and 21, except that the apparatus "detects at least one of a [premises/vehicle] use, an unauthorized use of the [premises/vehicle], a theft of the [premises/vehicle], and an occurrence warranting providing notice to [the owner, operator, or user] of the [premises/vehicle]." (*Id.* at col. 106, ll. 48–57, col. 110, ll. 26–36.) Dependent claim 29 describes the apparatus recited in claim 21, but also includes a "positioning device" that "determines a position or a location of the vehicle" and transmits this information to the second processing device. (*Id.* at col. 109, ll. 49–61.) Independent claims 42, 68, and 84 are very similar to the apparatuses recited in claims 1 and 21, except that a first processing device "monitors and detects an event," such as "a state of disrepair," occurring at a vehicle or premises, and then signals containing information about this event are transmitted from the first processing device and second processing device to the communication device. (*Id.* at col. 114, ll. 33–62, col. 119, ll. 37–65, col. 121, l. 46 – col. 122, l. 9.) Lastly, independent claims 87 and 88 similarly describe a "method" for receiving and transmitting information about "an event" occurring at a vehicle or premises through the use of first and second processing devices that transmit signals containing information about the event to a communication device. (*Id.* at col. 117, l. 34 – col. 118, l. 36, col. 122, l. 28 – 124, l. 5.)

C. **Procedural History**

In its complaint, filed on December 8, 2014, Plaintiff Joao Control alleges that Defendant Telular has infringed on the `046 and `363 patents by advertising and selling "control and monitoring devices and systems," which "can be operated and controlled through remote access via interactive cellular and/or broadband connections via one or more online portals." (Compl. ¶ 11.) On August 21, 2015, Defendant filed a motion for judgment on the pleadings, asserting that the `046 and `363 patents claim an ineligible subject matter in violation of 35 U.S.C. § 101. (Def. Mot. [45].) Plaintiff moved to strike Defendant's motion [61], and the court denied that

motion on January 5, 2016 [67].  Plaintiff filed a response to Defendant's motion on December 15, 2015 [60], and Defendant filed a reply on December 29, 2015 [64].

## **DISCUSSION**

**A.     Standard of Review**

A motion for judgment on the pleadings under FED. R. CIV. P. 12(c) challenges "the sufficiency of the complaint to state a claim upon which relief may be granted," *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009), and is subject to the same standard as a Rule 12(b)(6) motion to dismiss*. United States v. Wood*, 925 F.2d 1950, 1581 (7th Cir. 1991).  This means that the court will view the facts and inferences drawn from the pleadings in the light most favorable to the non-moving party.  *Emerg. Servs. Billing Corp., Inc. v. Allstate Ins. Co.*, 668 F.3d 459, 464 (7th Cir. 2012) (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998)).  Because every patent is presumed to be issued properly, *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 91 (2011), a party challenging patent eligibility under Rule 12(c) must point to clear and convincing evidence that the patent covers a patent-ineligible subject matter.[1]  *Id.*  This clear-and-convincing standard applies only to questions of fact, not questions of law.  *SSIH Equip. S.A. v. U.S. Int'l Trade Comm'n*, 718 F.2d 365, 375 (Fed. Cir. 1983) ("[W]e find it inappropriate to speak in terms of a particular standard of proof being necessary to reach a legal conclusion [because]

---

[1] Several courts have questioned the application of the clear-and-convincing evidence standard to § 101 cases based on language in a recent concurring opinion by Federal Circuit Judge Mayer.  Specifically, Judge Mayer wrote: "[b]ecause the [Patent and Trademark Office] has for many years applied an insufficiently rigorous subject matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 720–21 (Fed. Cir. 2014) (hereinafter, "*Ultramercial II*"); *see Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *7–8 (C.D. Cal. Mar. 17, 2015) (declining to apply clear and convincing evidence standard in a § 101 case); *Wireless Media Innov., LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405 (D.N.J. 2015) (same); *DataTern, Inc. v. Microstrategy, Inc.*, Nos. 11-11970-FDS, 11-12220-FDS, 2015 WL 5190715, at *7–8 (D. Mass. Sept. 4, 2015) (questioning the applicability of the clear-and-convincing standard in the context of a § 101 challenge).  While the court finds Judge Mayer's rationale compelling, it has adhered to the clear-and-convincing evidence standard absent a controlling opinion from the Supreme Court or Federal Circuit.

[s]tandard of proof relates to specific factual questions."); *Alza Corp. v. Mylan Labs, Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006) ("[T]he movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts.") In considering a Rule 12(c) motion, a court may look at documents incorporated into the pleadings by reference as well as matters of public record, *Wood*, 925 F.2d at 1582, such as the patents themselves and the prosecution history. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (7th Cir. 2005).

**B.     Patent Eligibility under 35 U.S.C. § 101**

Defendant contends that the `046 and `363 patents should be declared invalid because they contain no more than an abstract idea. To be patent-eligible, § 101 of the Patent Act requires that a claimed invention be a "new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. Although § 101 is broad in scope, the Supreme Court has recognized three fundamental exceptions to statutory patent eligibility: "laws of nature, physical phenomena, and abstract ideas." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)). These narrow exceptions "strik[e] the balance between protecting inventors and not granting monopolies over procedures that others would discover by independent, creative application of general principles." *Id.* at 606. An invention is not necessarily ineligible for patent because it involves an abstract concept, however. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). An invention that applies an abstract concept to "a new and useful end," so as to "integrate the building blocks [of human ingenuity] into something more," will be eligible for patent protection. *Id.*

To determine whether an invention is patent-eligible under § 101, courts engage in a two-step process. *Alice*, 134 S. Ct. at 2355 (citing *Mayo Collaborative Serv. v. Prometheus Labs*, 132 S. Ct. 1289, 1296–97 (2012)). First, the court must determine "whether the claims at issue are directed to one of the patent-ineligible concepts"—laws of nature, natural phenomena, or abstract ideas. *Id.* (citation omitted). If they are, the court must then "search for an 'inventive

8

concept'" in the claims to determine whether they contain any "additional elements" that "transform [the ineligible concept] into a patent-eligible application." *Id.* (quotation and citation omitted).

In some circumstances, courts may properly decide the question of patent eligibility without first construing the claim terms. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity determination under § 101.") Indeed, where patent eligibility is dispositive, determining that issue at the outset "will have a number of salutary effects," such as conserving scarce judicial resources and minimizing unnecessary litigation costs. *Ultramercial II*, 772 F.3d at 718–19. Plaintiff cites as supplemental authority a recent case from New Jersey, *Synchronoss Tech., Inc. v. Hyperlync Tech., Inc.*, which denied a pre-claims-construction motion to dismiss pursuant to § 101, concluding that because the parties disputed construction of certain key terms in the patent, the court could not determine whether "'every possible plausible construction of each of the . . . claims asserted . . . render[ed] the patent ineligible.'" No. 15-2845 (MLC), 2016 WL 868920, at *3 (D.N.J. Mar. 7, 2016) (quoting *A Pty Ltd. v. Google, Inc.*, No. 15-157, 2015 WL 5883354, at *6 (W.D. Tex. Oct. 8, 2015)). In this case, in contrast, the court concludes that resolution of the parties' disputes regarding certain key patent terms would have no bearing on the court's § 101 analysis. The court has reviewed the parties' Joint Claim Construction Status Report [77], and even interpreting the claims in the light most favorable to Plaintiff, there is no "reasonable construction that would bring [the claims] within patentable subject matter." *Ultramercial II*, 772 F.3d at 719 (quoting *Ultramercial, LLC v. Hulu, LLC*, No. 09-cv-6918, 2010 WL 3360098, at *6 (C.D. Cal. Aug. 13, 2010)). It should also be noted that the patent-at-issue in *Synchronoss Tech.* involved a data synchronization invention that was "rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* (quotations and citations omitted). The court reasoned that claims construction was necessary in order to determine whether the patent claims stated

9

"how [certain] interactions . . . [were] manipulated to yield a desired result." *Id.* As will be discussed in more detail below, neither the `046 nor the `363 patent purports to overcome a problem unique to computers; rather, the patents merely use conventional components to implement the allegedly novel concept of remote monitoring and control of property. Further, it is clear without claims construction that the patents do not provide details about how the computers contained therein are "manipulated" or otherwise programmed to yield results. Thus no formal claim construction is required.

### 1. The `046 and `363 Patents are Directed to Abstract Ideas

Under the framework set forth in *Alice*, the court must first look to whether the `046 and `363 patents are directed to patent-ineligible concepts. Defendant argues that the patents violate § 101 because they attempt to obtain patent protection for an abstract idea: "asset monitoring and processing of signals thereon." (Def. Mot. at 3.) The court does not adopt Defendant's characterization of the patents in all respects, but does agree with Defendant that the patents at issue here generally seek to protect the abstract idea of monitoring and controlling property, thus claiming ineligible subject matter in violation of § 101.

Although "[t]he Supreme Court has not 'delimit[ed] the precise contours of the 'abstract ideas' category,'" the Federal Circuit has found that a patent claim is directed to an abstract idea when it involves a concept that is "well-known" and that "humans have always performed." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). The Federal Circuit has also described an abstract idea as one "ha[ving] no particular concrete or tangible form or application." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015). According to the Supreme Court and Federal Circuit, classic examples of abstract ideas include: mathematic algorithms, *Gottschalk v. Benson*, 409 U.S. 63, 64 (1978); fundamental economic and business practices, *Alice*, 134 S. Ct. 2356–57; and data recognition and storage, *Content Extraction,* 76 F.3d at 1347. In *Alice*, for example, the Supreme Court invalidated a patent for mitigating settlement risk through a computer

system, concluding that the patent was directed to the abstract idea of intermediated settlement. 134 S. Ct. at 2351–52, 2355. The Court reasoned that the concept of intermediated settlement was a "fundamental economic practice long prevalent in our system of commerce,'" and thus exceeded the limitations imposed by § 101. *Id.* at 2355 (citation omitted).

Based upon this guidance from the Supreme Court and Federal Circuit, in a number of recent decisions, courts have invalidated patents directed to the idea of monitoring and communicating information. In *Wireless Media Innovations*, for example, the court invalidated two patents for a system and method of "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting and communicating this information in various forms through generic computer functions." 100 F. Supp. 3d 405, 413 (D.N.J. 2015). This was an abstract idea, according to the court, because these general monitoring and recording functions "could be carried out by human memory, by hand, or by conventional equipment and general purpose computer and printer resources." *Id.* at 415. Similarly, in *MacroPoint, LLC v. FourKites, Inc.*, the court held that certain patents were directed towards an abstract idea because their claims "disclose[d] nothing more than a process for tracking freight, including monitoring, locating, and communicating regarding the location of the freight." No. 15-cv-1002, 2015 WL 6870118, at *3 (N.D. Ohio Nov. 6, 2015); *see also Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, No. 14 C 9680, 2015 WL 5951753, at *4 (N.D. Ill. 2015) (Chang, J.) (holding that patent was invalid under § 101 because patent claims were directed to abstract idea "of observing, analyzing, monitoring, and altering" data coming from a water treatment plant); *Hewlett Packard Co. v. ServiceNow, Inc.*, No. 14-cv-00570-BLF, 2015 WL 1133244, at *5 (N.D. Cal. Mar. 10, 2015) (concluding that patent was invalid under § 101 because it was "directed to the abstract idea of monitoring deadlines and providing an alert when the deadline is approaching").

The court agrees with the courts' reasoning in *Wireless Media Innovations* and *MacroPoint*. Here, similarly, the `046 and `363 patents are directed to the abstract idea of

11

monitoring and controlling property and communicating this information through generic computer functions. Plaintiff asserts that the `046 and `363 patents are unique in that they allow for the monitoring and control of property remotely without the need for a centralized security office, but this does not change the fact that, at its core, the purpose of the claimed invention is the abstract idea of monitoring, *i.e.*, surveillance. The surveillance of property in order to provide security is a "well-known" concept that "humans have always performed." *Content Extraction*, 776 F.3d at 1347. Further, surveillance is not confined to any location, time, or system; it thus "has no particular concrete or tangible form or application." *Versata Dev. Grp.*, 793 F.3d at 1333. Law enforcement officials have used various forms of electronic video and audio recording devices to monitor potential criminal activity on or around property since the mid-twentieth century. *See, e.g.*, *O'Brien v. United States*, 386 U.S. 345, 346 (1967) (involving use of electronic surveillance installed in a commercial establishment to monitor conversation of suspect). And although monitoring may have been done by the human eye before the invention of electricity, the general concept of keeping watch over property is timeless. As early as 31 BC, for example, the Romans monitored and secured their empire through numerous watchtowers, which could communicate through a signaling system. *See generally* P. Southern, *Signals versus Illumination on Roman Frontiers*, 21 BRITANNIA, 233–42 (1990). In recent times, the monitoring of vehicles and premises has become ubiquitous—one would be hard-pressed to find a store or street corner in all of Chicago that is not under some sort of video surveillance. *See Vitale v. City of Bridgeview Police Officer Glynn*, No. 89 C 9181, 1990 WL 141440, at *1 (N.D. Ill. Sept. 17, 1990) (demonstrating that idea of an in-store surveillance system was a familiar concept as early as the 1990s); *Schwartz v. Co*ulter, No. 91 C 7954, 1993 WL 398578, at *3 (N.D. Ill. Oct. 6, 1993) (same).

The fact that the `046 and `363 patents purport to solve a problem by allowing individuals to monitor their property remotely through the use of a computer network does not make the patents non-abstract. *See, e.g.*, *Tuxis Technologies, LLC v. Amazon.com, Inc.*, No.

13-1771-RGA, 2015 WL 1387815, at *2 (D. Del. Mar. 25, 2015) ("[T]he fact that [performance of the idea] occurs remotely and/or over the Internet does not make the claimed subject matter non-abstract.") In fact, a claimed invention's ability to operate remotely has played little to no role in other courts' § 101 analyses. *See, e.g.*, *Becton, Dickson & Co. v. Baxter Intern., Inc.*, No. 1-14-CV-222-LY, 2015 WL 5148850, at *5 (W.D. Tex. Aug. 3, 2015) ("The fact that [an invention] is 'remote' is of no added consequence to the abstract nature of the concept."); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562 (D. Del. 2014) (patent claim "at its core, describes the implementation of the abstract idea of cataloguing documents to facilitate their retrieval from storage in the field of remote computing"). Logically, this makes sense; "[s]tating an abstract idea while adding the wor[d] '[remotely]' is not . . . the sort of 'additional featur[e]' that provides any 'practical assurance that the [invention] is more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2350–51.

In addition to its monitoring, the security system described in the `363 patent is directed to controlling equipment located in or on a vehicle or premises. This, too, is an abstract idea. Turning equipment on and off, or otherwise controlling equipment, is a well-known concept. Indeed, the most basic electronic equipment, such as coffee makers, toasters, and electric lights, would be rendered useless if humans could not control them. In *Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, the Federal Circuit invalidated a patent for a system designed to screen a vehicle for equipment impairments and then control the vehicle in response to the screening results. No. 2015–1411, ___ Fed. App. ___, 2015 WL 9461707, at *2 (Fed. Cir. Dec. 28, 2015). The Federal Circuit held that the claims were directed to an abstract idea because "[n]one of the claims at issue are limited to a particular kind of impairment, explain how to perform either screening or testing for any impairment, specify how to program [the system] to perform any screening or testing, or explain the nature of control to be exercised on the vehicle in response to the test results." *Id.* at *2.

The `363 patent suffers from the same deficiencies as the patent-at-issue in *Vehicle Intelligence and Safety*. The representative patent claims describe a network of devices that transmit and receive signals with instructions for "activating, de-activating, disabling, re-enabling, and controlling" any "device," "equipment," "appliance," "component," or "system" located at a vehicle or premises. (`363 patent, col. 104, ll. 16–18; col. 108, ll. 16–28.) The patent claims do not describe how the devices are programmed to activate, de-activate, disable, re-enable, or control property, or how the devices are programmed to send particular signals to one another. In other words, the patent claims contain no description about how the apparatus works generally, other than through the use of generic computer "devices," which transmit and receive data. Without meaningful limitations, the claimed invention could apply to any type of conventional computer network and any type of property associated with a vehicle or premises; it thus "risk[s] disproportionately tying up the use of the underlying [abstract] idea" of remotely controlling property. *See Alice*, 134 S. Ct. at 2354; *see also Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013) ("In the case of abstractness, the court must determine whether the claim poses 'any risk of preempting an abstract idea.'" (citation omitted)).

Plaintiff asserts that because the `046 and `363 patent claims contain "physical, tangible components," they are directed to something more than performance of the abstract idea of monitoring and controlling property. (Pl. Resp. at 8.) The physical components recited in `046 patent claims 1 and 30 include: a "processing device," "communication device," "video recording device," and a "camera." (Pl. Resp. at 9; `046 patent, col. 109, ll. 2–17, col. 111, ll. 14–31.) In claims 1 and 21 of the `363 patent, similarly, these components include a "processing device," "premises equipment," and "signal." (Pl. Resp. at 8; `363 patent, col. 104, ll. 13–60, col. 108, ll. 16–62.) An abstract idea, however, is not patentable merely because it includes physical components or structures. *Alice*, 134 S. Ct. at 2358. In *Alice*, the fact that the abstract idea of intermediated settlement was performed using a computer, which "necessarily exist[s] in the

physical, rather than purely conceptual, realm . . . [was] beside the point." *Id.* The Court explained that if every patent were declared valid so long as it involved the use of a computer or other machine, "an applicant could claim any principle of the physical or social sciences by reciting a . . . system configured to implement the relevant concept." *Id.* at 2359. In this case, the patent claims recite nothing more than the concept of monitoring and controlling property through the use of generic computer devices. This is not sufficient to transform this abstract idea into a patentable invention.

Plaintiff also argues that the `046 and `363 patents are not directed to abstract ideas because in *The Chamberlain Grp., Inc. v. Linear LLC*, the court held that a similar patent was valid under § 101. 114 F. Supp. 3d 614 (N.D. Ill. 2015). The patent-at-issue in *Chamberlin* involved the "use [of] a computer network interface to facilitate communication between [a] moveable barrier (e.g. a garage door) and a controller or operator that controls movement of the garage door in response to a status check or a status change request on the network interface." *Id.* at 625. Because the patent claims were directed to a "real-world, physical" purpose—"the opening and closing of a door"—the court held that the patent did not cover an abstract idea. *Id. Chamberlain* is distinguishable because the `046 and `363 patent claims cover a much broader concept than the claims at issue in that case. While the *Chamberlain* patent was limited to a system for remotely controlling one specific type of equipment—a moveable barrier—the `046 and `363 patents contain no such limitations. Rather, the patents describe apparatuses that can monitor and control any type of vehicle or premises, or component thereof. The court notes, further, that *Chamberlain* was decided before the Federal Circuit's decision in *Vehicle Intelligence and Safety*, which invalidated a patent involving the physical "control . . . of . . . equipment." 2015 WL 9461707, at *1. As *Vehicle Intelligence and Safety* demonstrates, the mere presence of a "real-world, physical" purpose, such as controlling equipment, does not show that the claims do not preempt an abstract idea.

Lastly, Plaintiff suggests that all 195 claims of the `046 and `363 patents must be considered separately to determine patent eligibility. To decide this case, however, the court is not required to individually address each of almost 200 claims. The remaining claims of the `046 and `363 patents are "substantially similar and linked to the same abstract idea" as the representative claims discussed above, and fail for the same reasons. *Content Extraction & Transmission*, 776 F.3d at 1348; *see also Ultramercial II*, 772 F.3d at 712 ("[T]he other claims of the patent . . . suffer from the same infirmity as claim 1 and need not be considered further.")

### 2. The `046 and `363 Patents Do Not Contain an Inventive Concept

Having determined that the `046 and `363 patents embody the abstract idea of monitoring and controlling property, under step two of *Alice*, the court must consider whether the elements of the claims set forth an inventive concept sufficient to transform the idea into a patent-eligible invention. The court agrees with Defendant that the patent claims contain no inventive concept.

To determine whether patent claims contain an inventive concept, "[t]he relevant question is whether the claims . . . do more than simply instruct the practitioner to implement the abstract idea . . . on a generic computer." *Alice*, 134 S. Ct. at 2359; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1637 (Fed. Cir. 2015) ("A simple instruction to apply an abstract idea on a computer" does not amount to an "inventive concept." (citation omitted)) In *Alice*, the Court found that the patent claims did not contain an inventive concept because "each step [of the patented process did] no more than require a generic computer to perform generic computer functions." *Id.* at 2359. These generic computer functions included obtaining data, keeping records, and issuing instructions. *Id.*; *see also Accenture Global Servs.*, 728 F.3d at 1344–45 (implementing a general idea through a combination of computer components, without meaningful limitations, is not a patent-eligible concept).

16

As described above, the apparatuses recited in `046 patent claims 1 and 30 are comprised of the following components: a "video recording device," "camera," "processing device," and "communication device." (`046 patent, col. 109, ll. 2–17, col. 111, ll. 14–31.) The apparatuses recited in `363 patent claims 1 and 21 are comprised of a: "[first, second, and third] processing device;" "[premises/vehicle] system;" "[premises/vehicle] device;" "[premises/vehicle] equipment system;" "[premises/vehicle] component;" and "[premises/vehicle] appliance." (`363 patent, col. 104, ll. 13–60; col. 108, ll. 16–62.) The processing and communication devices "receiv[e]" and "transmi[t]" "information" about a vehicle or premises and are connected to "the Internet or World Wide Web," allowing an individual to access this information from a remote location. (*Id.*; `046 patent, col. 110, ll. 19–31.) In the `363 patent, the processing device also exercises "control" over parts of the vehicle or premises in response to information it receives. (`363 patent, 104, ll. 13–60; col. 108, ll. 16–62.) According to Plaintiff, these communication and processing devices "add to and expand upon then-existing technologies for monitoring and security systems" by providing an individual with remote access to information about his or her property without the need for a "central office [to] communicate [the information] separately (through a telephone)." (Pl. Resp. at 11.)

The communication and processing devices recited in the `046 and `363 patent claims, however, merely perform basic computing functions of receiving, processing, and transmitting information. *See Neochloris*, 2015 WL 5951753, at *6 ("'At its most basic . . . a computer is an automatic electronic device for performing mathematical or logical operations' involving the monitoring and processing of data." (quoting *Bancorp Servs.*, 687 F.3d at 1277 (citation and quotations omitted))); *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1316 (Fed. Cir. 2011) ("'processing,' 'receiving,' and 'storing,' . . . can be achieved by any general purpose computer without special programming"). Absent from the claims is any inventive concept, such as the use of unconventional software or computer equipment with special capabilities that can "improve the functioning of the [computer] itself." *Alice*, 134 S. Ct.

17

at 2359. Accordingly, because the apparatuses described in the `046 and `363 patent claims merely instruct the performance of an abstract idea—monitoring and controlling property—on generic computer devices connected to a network and the Internet, the patent claims do not set forth any "inventive concept." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) (the elements of a patent claim do not contain an "inventive concept" if they "merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet").

In sum, the `046 and `363 patents may describe systems allowing for the abstract idea of monitoring and controlling property to be performed remotely or more efficiently, but the descriptions do not impose a meaningful limit on the scope of the claim. *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1333 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more [efficiently]."); *see also Bancorp Servs.*, 687 F.3d at 1278 ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter.")  "[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time." *Alexsam, Inc. v. IDT Corp.*, 715 F.3d 1336, 1349 (Fed. Cir. 2013) (quoting *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 63 (1998)).  Plaintiff in this case has not upheld its end of the bargain; instead it "seeks broad monopoly rights over a . . . basic idea without a concomitant contribution to the existing body of scientific and technological knowledge." *Id.*  For this reason and the reasons explained above, the `046 and `363 patents fall within the category of patent-ineligible subject matter under § 101.

## **CONCLUSION**

The `046 and `363 patents do not meet the requirements of 35 U.S.C. § 101; the patent claims are directed to the abstract idea of monitoring and controlling property, and they do not contain any additional elements sufficient to transform this abstract idea into a patent-eligible invention. Defendant's motion for judgment on the pleadings [45] is therefore granted. Plaintiff's motion to strike affirmative defenses [61] is stricken as moot.

ENTER:

Date: March 23, 2016

_____
REBECCA R. PALLMEYER
United States District Judge

`