UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOAO CONTROL & MONITORING SYSTEMS, LLC, | ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 14 C 9852 ) |
| TELULAR CORPORATION, | ) Judge Rebecca R. Pallmeyer ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION AND ORDER

Plaintiff Joao Control & Monitoring System brought this lawsuit against Defendant Telular Corporation, alleging that Telular had infringed two of Joao's patents for systems designed to provide security for vehicles and premises through a network connected to the Internet. Telular moved for judgment on the pleadings under FED. R. CIV. P. 12(c). On March 23, 2016, the court granted that motion, concluding that both patents were invalid because they were directed to abstract ideas and thus were not patent-eligible. Joao has moved for reconsideration of that ruling. Joao notes that it asserted only some, but not all, of the patents' claims in its infringement contentions pursuant to this court's local patent rules. Accordingly, Joao urges, the court's ruling was properly limited only to those asserted claims, and the court lacked jurisdiction to consider the validity of any claims Joao did not assert. Joao further asks the court to limit its ruling to the asserted patent claims that the court specifically analyzed in its opinion and order. For the reasons explained below, the motion is granted in part and denied in part.

## BACKGROUND

### I. Factual History

The facts of this case are recited in detail in this court's March 23, 2016 Opinion and Order, *Joao Control & Monitoring Sys., LLC v. Telular Corp.*, 173 F. Supp. 3d 717 (N.D. Ill. 2016). Joao received United States Patent No. 6,587,046 (the "'046 patent") in July 2003 and United States Patent No. 7,397,363 (the "'363 patent") in July 2008. *Id.* at 719–20. Both

patents describe a system for remotely monitoring property using a network of devices connected to the Internet. *Id.* at 720–23. Joao filed this suit against Telular on December 8, 2014, alleging that Telular had infringed "one or more claims" in each of the patents. (*See generally* Compl. [1].) On December 31, 2014, Telular counterclaimed, alleging, among other things, that both patents were invalid and seeking a declaratory judgment to that effect. (*See generally* Def.'s Answer to Compl. and Countercl. [10].)

In a report filed with the court on January 13, 2015, Joao agreed to limit its asserted claims to twelve claims total across the two patents (though it had not yet identified which twelve claims it would assert). (Pl.'s Report of Rule 26(f) Planning Meeting [16] at 3.) On February 18, 2015, Joao served Telular with its initial infringement contentions pursuant to this District's local patent rules.[1] (*See* Pl.'s Mot. for Recons. [92] at 3.) The parties then initiated discovery, and Joao served supplemental infringement contentions on July 20, 2015. (*See* Pl.'s Mot. for Recons. [92] at 4.) On August 21, 2015, Telular moved for judgment on the pleadings, arguing that "the asserted claims of the patents-in-suit are patent-ineligible" as abstract ideas. (Def.'s Mot. for J. on Pleadings [45] at 1.) The court entered and continued the motion pending completion of discovery. (Minute Order [50].) Joao served its final infringement contentions on October 15, 2015[2] (*See* Pl.'s Mot. for Recons. [92] at 4), and responded to Telular's motion on December 15, 2015, pursuant to the court's scheduling order. (*See* Pl.'s Opp. to Def.'s Mot. for J. on Pleadings [60]; Minute Orders [57], [59].) The Asserted Claims are claims 33, 45, 53, and

---

[1] "A party claiming patent infringement must serve on all parties 'Initial Infringement Contentions' containing the following information . . . (a) identification each claim of each patent in suit that is allegedly infringed by the opposing party . . . ." N.D. ILL. PAT. R. 2.2.

[2] *See* N.D. ILL. PAT. R. 3.4. The court has not been provided copies of these infringement contentions, and so the court cannot verify the dates that Joao claims to have served these contentions, nor the date when it first identified the twelve asserted claims. Telular has not challenged these statements, however, so the court therefore assumes that these dates are accurate. More importantly, it is clear that Joao had identified the asserted claims before Telular filed its Rule 12(c) motion, because Telular addressed those twelve asserted claims in its motion.

90 of the '046 patent and claims 3, 4, 6, 8, 9, 16, 20, and 46 of the '363 patent. (*See* Pl.'s Mot. for Recons. [92] at 4; Def.'s Mot. for J. on Pleadings [45] at 5.)

## II. The Court's Order Declaring the Patents Invalid

On March 23, 2016, the court granted Telular's motion for judgment on the pleadings, finding all of the patent claims invalid as non-patentable subject matter under 35 U.S.C. § 101. The court held that the '046 and '363 patents were directed to an abstract idea, specifically, the idea of monitoring and controlling property. *Joao Control & Monitoring Sys.*, 173 F. Supp. 3d at 726–27. The '046 patent covers "[a] monitoring apparatus and method including a processing device for receiving video information recorded [by a camera] located at a vehicle or a premises [while] the processing device is at [another location]" ('046 Patent, at [57], Joint Appendix to Claim Construction Briefs ("JA") [66] at 000001), while the '363 patent describes an apparatus where a network of similar processing devices transmit signals "for activating, de-activating, disabling, re-enabling, and/or controlling an operation of a system, device, equipment, equipment system, component, and appliance, of the premises or vehicle." ('363 Patent, at [57], JA at 000084.) The fact that such monitoring was done over a computer network did not rescue these claims, the court concluded, nor did the fact that the equipment could be turned on and off remotely, because such functionality is found in generic electronic devices. *Joao Control & Monitoring Sys.*, 173 F. Supp. 3d at 727–28. The court also determined that the patents did not set forth an inventive concept because they required only basic computing functions. *Id.* at 729–30.

In reaching this conclusion, the court noted that the 112 claims in the '046 patent and the 88 claims in the '363 patent "contain[ed] only slight variations" from one another, and therefore analyzed only a selection of the claims from each patent. *Id.* at 721–23. In particular, the court identified claims 1 and 30 of the '046 patent, and explained how claims 6, 17, 35, 46, 58, 85, 111, and 112 were similar representative claims. *Id.* at 720–21. For the '363 patent, the court analyzed claims 1, 9, 21, 29, 33, 42, 68, 84, 87, and 88 as representative claims. *Id.* at 721–23.

3

Joao has moved for reconsideration. Joao argues that the court lacked jurisdiction to rule on the validity of any claims other than the twelve asserted claims that Joao identified pursuant to the local patent rules. (*See generally* Pl.'s Mot. for Recons. [92].) Joao contends, further, that the court's ruling should be limited to those claims over which it has jurisdiction *and* which it actually analyzed in its order (the representative claims the court identified)—doing so would limit the court's ruling to claim 9 of the '363 patent. (*See id.* at 6–7.) For the reasons explained here, the court agrees with Joao that it has jurisdiction only over the asserted claims, but holds that its order applies to all the asserted claims, not merely to claim 9 of the '363 patent.

## DISCUSSION

### I. Legal Standard

The court will grant a motion for reconsideration when "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal citations and quotation marks omitted). Although a party moving for reconsideration may not present arguments that were previously available to it, *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000), a party can raise the issue of lack of subject-matter jurisdiction at any time. *See* FED. R. CIV. P. 12(h)(3). When a party challenges the court's jurisdiction, the party seeking to invoke jurisdiction bears the burden of demonstrating that the jurisdictional requirements are met. *See Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 803 (7th Cir. 2009).

The crux of Joao's argument is that by asserting only a limited number of patent claims, Joao limited its complaint, effectively withdrawing any portion of its complaint that alleged infringement of the unasserted claims of the two patents-in-suit. Telular challenges this, and contends that the court maintains jurisdiction over all of the patent claims, for two reasons.

4

First, Telular notes that Joao's original complaint alleges infringement of the entire patents, thus establishing jurisdiction over every claim in those patents. Second, Telular argues that its declaratory judgment counterclaim gives the court jurisdiction over the entire patents, even after Joao limited its infringement contentions to the asserted claims.

## II.  Jurisdiction After Joao's Limitation of Asserted Claims

Joao's original complaint alleged that Telular had infringed "one or more claims" of both of the patents-in-suit. Those allegations amply support the court's jurisdiction over all of the patents' claims. Joao asserts, however, that Joao effectively withdrew the portion of its complaint that alleged infringement of "one or more" (or potentially all) of the claims. The circumstances are not on all fours with *Jervis B. Webb Co. v. Southern Systems, Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984) and *Sloan Valve Co. v. Zurn Industries, Inc.*, 712 F. Supp. 2d 743, 750 (N.D. Ill. 2010), *as corrected* (May 6, 2010), relied on by Joao. In those cases, the plaintiffs' original complaint alleged infringement of only some, but not all, claims of the patents in suit. *Jervis*, 742 F.2d at 1391, 1399; *Sloan*, 712 F. Supp. 2d at 750. Those courts never had jurisdiction over certain unasserted claims. In this case, in contrast, the questions are whether, by withdrawing several claims, Joao effectively withdrew those claims from the court's consideration.

The issue is not free from doubt, but *Streck, Inc. v. Research & Diagnostic Systems, Inc.*, 665 F.3d 1269 (Fed. Cir. 2012) is instructive. In that case, the plaintiff's June 2006 complaint alleged that the defendant had infringed the patents-in-suit, and the defendants counterclaimed, seeking a declaratory judgment that the asserted claims were invalid and not infringed. *Id.* at 1275. The case was filed in Nebraska, but the parties agreed to follow the local patent rules of the Northern District of California and identify which claims they considered infringed and invalid, respectively. *Id.* at 1276. In December 2006, the plaintiff identified fifteen asserted claims and made its preliminary infringement contentions; it later narrowed these contentions to ten of the original fifteen. *Id.* The defendant made various invalidity contentions,

5

identifying some patent claims as allegedly invalid because of prior art, and others because they failed to satisfy the enablement and written description requirements. *Id.*

Both parties moved for summary judgment on several issues. In particular, the defendant sought summary judgment on its counterclaim that two of the claims, unasserted by the plaintiff, were invalid as indefinite, inoperative, or not enabled. *Id.* at 1277. The district court declined to reach those claims, noting that the defendant had not explained how the court had jurisdiction over "any claims other than those that [the plaintiff] asserts [the defendant] has infringed in this action." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 658 F. Supp. 2d 988, 1000 (D. Neb. 2009), *aff'd*, 665 F.3d 1269 (Fed. Cir. 2012). The court found that "[t]he harm that creates a justiciable controversy and gives rise to declaratory judgment jurisdiction is not present with respect to the unasserted claims." *Id.* In doing so, the district court applied the Federal Circuit's "reasonable apprehension of suit test" for jurisdiction over declaratory judgment claims, a bright-line test for jurisdiction that has been modified by the Supreme Court in *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 132 n.11 (2007), discussed below. *Streck*, 665 F.3d at 1281–84.

With respect to the asserted claims, however, the *Streck* trial court granted partial summary judgment for the plaintiff and found infringement as a matter of law. The parties proceeded to trial on willfulness, enablement/written description, priority of invention, and damages, and the court concluded as a matter of law that the patents satisfied the enablement/written description requirement. *Streck*, 665 F.3d at 1277–79. The jury then rendered a verdict in favor of plaintiff and awarded damages, finding (1) in favor of plaintiff on the defendant's counterclaim that the defendant was the first to invent, and (2) in favor of defendant on the issue of willfulness. *Id.* at 1279.

The parties appealed, challenging a number of rulings, including, as relevant for our purposes here, dismissal of the unasserted claims. *Id.* at 1273–74. The Federal Circuit concluded that the defendant (the counterclaim plaintiff) had not sufficiently established that the

district court had jurisdiction over those unasserted claims. Because the parties identified their asserted claims early in the litigation, the court observed, "both parties were on notice from the start of litigation that the scope of claims at issue was only a subset of the full patents-in-suit." *Id.* at 1284. The district court had overstated defendant's burden in holding that defendant failed to show a "reasonable apprehension" of being sued on those claims; such a showing is no longer necessary, under the test set forth *MedImmune*, 549 U.S. 118.[3] But even under the more relaxed standard set forth in *MedImmune,* defendant is entitled to invoke the court's jurisdiction to award declaratory relief only if it can show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune.*, 549 U.S. at 127 (2007) (internal citation and quotation marks omitted). In the context of patent litigation, *Streck* held, "a counterclaimaint must show a continuing case or controversy with respect to withdrawn or otherwise unasserted claims." *Streck*, 665 F.3d at 1283. The *Streck* defendant had not done so, and the district court's decision not to exercise jurisdiction over the unasserted claims of the patent was affirmed. *Id.* at 1284.

*Streck* illustrates that narrowing patent litigation to asserted claims pursuant to local patent rules can appropriately limit the court's reach over other unasserted claims in the patent, even if those claims were at issue when the plaintiff filed its original complaint. Under that principle, the fact that the original complaint in this case alleged that both patents were infringed, without specifying particular claims, does not require the conclusion that all claims in the patent remain at issue throughout the litigation. Under *Streck*, effectively withdrawing some

---

[3] In *MedImmune*, a patent licensee sought a declaratory judgment that it no longer owed royalties because the patent was invalid. The Supreme Court held that the licensee established a genuine case or controversy concerning the patent's validity even without having exposed itself to suit by breaking or terminating the license agreement.

7

claims by refusing to assert them is tantamount to voluntarily withdrawing a cause of action.[4] Joao served its initial contentions on February 18, 2015, before Telular filed its motion and more than a year before the court's ruling. As in *Streck*, the parties had notice that the scope of the litigation had contracted from the initial complaint. The language in the complaint does not by itself support the court's exercise of jurisdiction over the unasserted claims. Though this is a motion for reconsideration, and the burden therefore appropriately lies with Joao, Joao has therefore shown that it effectively withdrew the portion of its complaint addressing the unasserted claims, leaving Telular the only party who seeks to invoke the court's jurisdiction over those claims.

Telular has two responses. First, Telular tries to distinguish *Streck* on the basis that the parties there were on notice that the scope of the litigation had narrowed. (Def.'s Resp. to Pl.'s Mot. for Recons. [96] at 8 n.8.) But Telular in this case also had notice that the scope of the litigation had narrowed: In its Rule 12(c) motion, Telular itself identifies the asserted claims (Def.'s Mot. for J. on Pleadings [45] at 5), and refers to "the asserted claims" throughout the motion. Telular does not explain how it was not on notice that the scope of the litigation had contracted.

Second, Telular claims that because Joao's infringement contentions were not final at the time of the court's ruling, Joao had not truly withdrawn the unasserted claims at that time. (Def.'s Resp. to Pl.'s Mot. for Recons. [96] at 7 n.7.) Yet Telular does not dispute that Joao had served its final infringement contentions, and Telular acknowledges that this court's local patent rules allow these contentions to be amended only upon a showing of good cause and the absence of unfair prejudice to opposing parties. N.D. ILL. PAT. R. 3.4. Telular emphasizes that the court had not yet ruled on claim construction, and that under the local patent rules, an

---

[4] The *Streck* court did note that the litigation had proceeded for years with the parties on notice "that the scope of claims at issue was only a subset of the full patents-in-suit[,]" *Streck*, 665 F.3d at 1284, but the court did not suggest that its conclusion would differ if the case had not consumed so much time.

adverse claim construction ruling may be good cause to amend infringement contentions; Joao therefore may have been permitted to amend its contentions after claim construction. But the parties in *Streck* had agreed to follow the local patent rules of the Northern District of California, which has similar requirements for amendments to contentions. N.D. CAL. PAT. R. 3-6. True, claim construction had occurred before the district court entered summary judgment in *Streck*. 665 F.3d at 1276–77. The infringement contentions in *Streck* were subject to amendment, however, yet the court determined that the scope of litigation had sufficiently narrowed to remove jurisdiction over the unasserted claims. In the case before this court, claim construction had not occurred at the time the court ruled on Telular's Rule 12(c) motion, but this consideration does not effectively distinguish *Streck*.[5]

The procedural posture in this case may be unusual. Telular filed its motion for judgment on the pleadings after discovery had commenced and initial contentions had been served. The parties did not fully brief the motion and the court did not rule, however, until after discovery was completed and the final contentions were served. A ruling on a motion for judgment on the pleadings might occur at an earlier stage in many cases. In this one, however, it occurred after infringement contentions had narrowed the scope of the litigation.

## III.   Effect of Telular's Counterclaim

Telular filed a counterclaim seeking a declaratory judgment that all of the claims of both patents are invalid. Telular's counterclaim is, thus, broader than the one filed by the defendant in *Streck* and, according to Telular, supports the court's exercise of jurisdiction over all of the claims of the patents in suit. As explained earlier, however, courts should grant declaratory relief only when there is "a substantial controversy . . . of sufficient immediacy and reality to warrant" such relief. *MedImmune*, 549 U.S. at 127 (internal citation and quotation marks omitted). "The burden is on the party claiming declaratory judgment jurisdiction to establish that

---

[5] Arguably, the fact that the court had not construed the claims eliminates concern that Joao's decision not to assert certain claims was a strategic effort to escape the result of an unfavorable claims construction.

9

such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since." *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

When Telular filed its counterclaim for declaratory relief, the court had jurisdiction over all claims in both patents by virtue of Joao's complaint, as explained above. But Telular must also show that jurisdiction has "continued since." Telular effectively contends that it can avoid this requirement. In support, Telular cites *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83 (1993), where plaintiff sued two defendants in two different courts, alleging infringement of the same two patents. Both defendants counterclaimed, seeking declaratory judgments that the patents were invalid. *Id.* at 85–86. In both cases, after the district court entered judgment for the defendants on infringement and declared the patents invalid, the Federal Circuit vacated the invalidity findings. *Id.* at 86–87. The Supreme Court, however, concluded that vacating the declaration of invalidity was inappropriate, because "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Id.* at 96. Telular emphasizes the *Cardinal Chemical* Court's holding that "while the initial burden of establishing the trial court's jurisdiction rests on the party invoking that jurisdiction, once that burden has been met courts are entitled to presume, *absent further information*, that jurisdiction continues." *Id.* at 98 (emphasis added). In Telular's view, Joao has not offered any "further information" demonstrating that jurisdiction is lacking.

Telular reads *Cardinal Chemical* as placing solely on Joao the burden of rebutting the presumption that this court has jurisdiction to declare both patents invalid. This court is less certain. The Federal Circuit considered a similar argument and explicitly rejected the notion that *Cardinal Chemical* allows a party bringing a declaratory judgment action to escape the requirement of showing that a substantial controversy exists. The Federal Circuit explained that "[the] view that *Cardinal Chemical* holds that the burden shifts to the party seeking to divest the court of jurisdiction to prove there is no longer a current case or controversy reads more into the

10

language of *Cardinal Chemical* than is justified." *Benitec*, 495 F.3d at 1345 (internal quotation marks omitted).

The *MedImmune* test for whether the courts may exercise declaratory judgment jurisdiction "is satisfied when the declaratory judgment plaintiff (here, Telular) is put 'to the choice between abandoning his rights or risking prosecution.'" *Arkema Inc. v. Honeywell Int'l, Inc.*, 706 F.3d 1351, 1356 (Fed. Cir. 2013) (quoting *MedImmune*, 549 U.S. at 129). As the Federal Circuit explained in *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329 (Fed. Cir. 2008), a party seeking declaratory judgment jurisdiction must ordinarily demonstrate that it faces an ongoing threat of injury:

> Although *MedImmune* clarified that an injury-in-fact sufficient to create an actual controversy can exist even when there is no apprehension of suit, it did not change the bedrock rule that a case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants—an objective standard that cannot be met by a purely subjective or speculative fear of future harm.

537 F.3d at 1339. "[D]eclaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement." *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). Thus, once the plaintiff in *Streck* narrowed its own claims, the defendant could not assume that jurisdiction continued over its entire declaratory judgment counterclaim; instead, the court found that the defendant did not make the showing required by *MedImmune*. *See Streck*, 665 F.3d at 1284. This court concludes that the proper exercise of continuing jurisdiction over a declaratory judgment counterclaim requires something more when the asserted claims in an infringement suit are narrowed during the course of litigation.

Telular's remaining arguments all appear to assume that Joao has the burden of defeating Telular's assertion of jurisdiction. First, Telular cites *Scanner Technologies Corp. v. ICOS Vision Systems Corp.*, 528 F.3d 1365, 1371 (Fed. Cir. 2008), where the patentee alleged infringement, and defendants counterclaimed, alleging that the patents were invalid. The

parties had agreed to try the case on one representative claim and had stipulated that "the entire case would stand or fall" on that claim. *Id.* at 1383. The Federal Circuit rejected the plaintiff's argument that the district court lacked jurisdiction to declare the other claims invalid. *Id.* The court noted the parties' stipulation that the non-representative claims still remained part of the case, *see id.* at 1383–84; otherwise, it would make no sense to consider one claim "representative" of claims that were no longer part of the litigation. Here, by contrast, Telular does not dispute that Joao now claims infringement of the asserted claims only.

Second, Telular urges that disclosures under this court's local patent rules are insufficient to limit the scope of an invalidity counterclaim. With respect to its own disclosures, Telular points out that the local rules require only disclosures of prior art under § 102, infringement contentions under § 271, and non-infringement, unenforceability or invalidity contentions under § 102 or § 112, but do not address the issue of non-patentable subject matter under § 101. Telular has not explained why this circumstance controls the appropriate reach of the court's declaratory judgment jurisdiction. True, the rules do not require a party challenging validity to make formal § 101 invalidity contentions, but the court does require that a party seeking a declaratory judgment of invalidity show that there is an actual case or controversy as to the validity of unasserted claims. Telular could do so in a variety of ways. *See Streck*, 665 F.3d at 1282 ("[T]here is no bright-line rule for determining whether an action satisfies the case or controversy requirement[.]").[6] The parties' patent contentions do not control the reach of the court's jurisdiction, but they do influence the determination of whether there is, before the court,

---

[6] This is not to say that Telular could never avail itself of the court's jurisdiction over the unasserted claims. If Joao had sent Telular "cease and desist" letters or requested a license fee pertaining to the unasserted claims, for example, there might be a case or controversy over those unasserted claims. Telular, however, has not pointed to any such letters or any other circumstance reflecting an ongoing case or controversy—its only support for continuing jurisdiction is the existence of the counterclaim itself. In its original ruling, the court observed that all of the claims in the patents-in-suit were "substantially similar and linked to the same abstract idea[.]" *Joao Control & Monitoring Sys.*, 173 F. Supp. 3d at 729. If that means there is a genuine threat that Telular might be sued for infringement of the non-asserted claims, Telular has not so argued.

a substantial controversy. There is no indication that Joao is using the court's local patent rules for any inappropriate reason—to the contrary, Joao limited the number of claims it was asserting early in the litigation.

The fact that Telular has filed a Rule 12(c) motion does not require the court to ignore that limitation. (*See* Def.'s Resp. to Pl.'s Mot. for Recons. [96] at 7–8.) "Subject matter jurisdiction is a threshold requirement for a court's power to exercise jurisdiction over a case[.]" *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) (explaining that an offer of a covenant not to sue removed subject-matter jurisdiction from a counterclaim seeking a declaration that a patent was invalid); *see also Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718 (Fed. Cir. 2014) ("[A] court must assure itself of its own jurisdiction *before* resolving the merits of a dispute[.]") (emphasis added) (internal citation omitted). Telular effectively argues that because the case was before the court on a Rule 12(c) motion, the court must limit its analysis to the pleadings and must therefore exercise jurisdiction over the entire counterclaim. But the court is not constrained by jurisdictional assertions; in fact, the court will always independently examine whether it has jurisdiction over a particular declaratory judgment counterclaim. And it is well-recognized that the Declaratory Judgment Act confers on federal courts "unique and substantial discretion" in deciding whether to exercise that jurisdiction. *MedImmune,* 549 U.S. at 136*,* quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The court in this case concludes it is not appropriate to ignore the impact of the parties' contentions, even though they occurred after the pleadings.

Telular has not satisfied the court that it must exercise jurisdiction over the entire counterclaim, even after Joao narrowed the litigation to the asserted claims. The court believes it appropriate to limit its own ruling to the asserted claims, as well.

**IV.    Representative Claims**

Joao also argues that, even though the court has jurisdiction over all the asserted claims, its invalidity ruling should be limited to claim 9 of the '363 patent, because that was the

13

only one of the asserted claims that the court analyzed as representative. The court considered this argument in response to Telular's Rule 12(c) motion and rejected it. *Joao Control & Monitoring Sys.*, 173 F. Supp. 3d at 729. The court determined that all the claims, necessarily including the other asserted claims, were "substantially similar and linked to the same abstract idea" as the analyzed representative claims. *Id.* (quoting *Content Extraction & Transmission, LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014)).

A party may not simply rehash previously-rejected arguments on a motion for reconsideration. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Joao argues, however, that the court misunderstood the holding of *Content Extraction*, 776 F.3d 1343, apparently resulting in a manifest error of law. Putting aside the fact that Joao has already made this same argument about *Content Extraction* (the first time in its response to Telular's Rule 12(c) motion about Telular's treatment of the case), the court does not believe that it has misunderstood *Content Extraction*.

In *Content Extraction*, the plaintiff did not challenge the defendant's characterization of two claims as "representative." *Id.* at 1346. And the district court, "*after conducting its own analysis* . . . determined that [the defendant] [wa]s correct that [the particular claims] [we]re representative, because all the claims [we]re substantially similar and linked to the same abstract idea." *Id.* at 1348 (emphasis added) (internal citations and quotation marks omitted). The Federal Circuit also noted that the plaintiff could have challenged the designation of these claims as representative, but did not do so and effectively waived its argument. *See id.* The Federal Circuit did not hold, however, that *only* those claims stipulated as representative by both parties may truly be representative claims. Instead, the Federal Circuit conducted its own review of the patent claims and reached the same conclusion as the district court: all of the patent claims were substantially similar and the particular claims were in fact representative. *Id.* The court thus reads *Content Extraction* to require the court to analyze the claims to determine if they are representative. The court did so in its earlier opinion, and designated the

14

representative claims, determining that each of the claims, even the non-representative ones, was directed to the same ideas that the court found abstract. *See Joao Control & Monitoring Sys.*, 173 F. Supp. 3d at 720–23. The *Content Extraction* holding is not limited to situations in which the parties have stipulated, and the court is free to determine that claims are substantially similar and therefore representative for purposes of patent-eligibility analysis.

Joao also ignores the court's citation to *Ultramercial*, 772 F.3d at 712, where the court characterized a single claim as "representative" and explained that "[a]s the other claims of the patent are drawn to a similar process, they suffer from the same infirmity as claim 1 and need not be considered further." There is no basis on which to conclude that the parties to that case had stipulated that claim 1 was representative. And if stipulation is required for a claim to be analyzed as a representative claim for patent-ineligible subject matter, this court expects the Federal Circuit would not have been so cavalier about this requirement in cases decided within two months of each other.

Joao instead cites cases for the general rule that the court must conduct a patent-eligibility analysis on a claim-by-claim basis. But these cases do not invalidate the concept of using representative claims. *Circuit Check v. QXQ*, 795 F.3d 1331, 1337 (Fed. Cir. 2015) concerned the burden of patent invalidity, but the fact that a party must overcome this burden for each claim is not inconsistent with a determination that claims are substantially similar and directed to the same abstract idea. Using representative claims does not eliminate any burdens, and in fact simply allows a party to address its analytical burdens more efficiently. In *Exergen Corp. v. Kaz USA, Inc.*, No. CV 13-10628-RGS, 2015 WL 8082402, at *1 (D. Mass. Dec. 7, 2015), several claims of the patent at issue were declared invalid in a different case. The court held that the claims not addressed in that other case had not been analyzed and so were not *automatically* invalid, because "courts have simultaneously invalidated and upheld different claims of the same patent under § 101." *Id.* at *5. But there, unlike here, there was no indication that the claims the court had not addressed were substantially similar to those that it

had. It benefits no one to have the court simply repeat its analysis twelve times.[7] The court will not limit its order to the single representative claim over which it has jurisdiction.

## **CONCLUSION**

For the reasons stated above, Joao's motion for reconsideration [92] is granted in part and denied in part. The court's ruling covers the claims asserted in Joao's disclosures, but only those claims.

ENTER:

Dated:    March 28, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

---

[7] Joao also seems to argue that the court's ruling should be limited to claim 9 because "[o]nly one of the *Asserted* Claims, claim 9 of the '363 patent, was identified in any patent disclosures or contentions by either party" (Pl.'s Mem. 5) (emphasis added). The implication is that it would be unfair to interpret the court's ruling as applicable to the other asserted claims because Joao did not have notice the other claims were at risk. This argument is puzzling. In Telular's Rule 12(c) motion, Telular identified the twelve asserted claims at issue. (Def.'s Mot. for J. on Pleadings [45] at 5.) Joao itself argues that Telular's motion was in fact directed at only these twelve asserted claims, not at all the claims in the patents. (Pl.'s Reply 2–3.) Joao cannot in good faith make this argument and then claim it had no notice that the court might rule on the other *asserted* claims.

16